**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| BILKY OKOH, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|    v. | )Civil Case No. AW-08-1855 |
| | ) |
| UNIVERSITY OF MARYLAND EASTERN SHORE, *et al.*, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION

Before this Court is Defendants' Motion for Summary Judgment (Doc. No. 15). Plaintiff Bilky Okoh brings this action alleging retaliation and discrimination in violation of Title VII and § 1981, as well as a claim under the Equal Pay Act. The Court has reviewed the entire record as well as the pleadings with respect to this motion and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will **GRANT** Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff Bilky Okoh ("Okoh" or "Plaintiff"), is a black female who is originally from Nigeria and became a United States citizen in 1991. Since 1992, Plaintiff held various positions as a contractual employee for the University of Maryland Eastern Shore ("UMES"). In 1994 and 1995 Plaintiff applied for positions as the Budget Director and Assistant Director of Auxiliary Enterprise, respectively, and was denied both positions. At some point between December 1995 and January 1996, Plaintiff was hired as a permanent employee of UMES as a Contract and Grant Accountant II. Around May 1996, several positions were reclassified throughout the University of Maryland System and all Accountant I and II positions, including Plaintiff's, were entitled as Accountant I. These adjustments did not result in any changes to the salary or

benefits of those employees whose positions were reclassified.  Nevertheless, Okoh appealed the decision to Gary Green, who was the Comptroller of UMES at the time and Okoh's supervisor, and Okoh was subsequently promoted to a position as Accountant III.

In May 1997, Plaintiff requested a review of her salary and reclassification of her Contract and Grant Accountant III position to Accountant IV.  In 1998, a University of Maryland College Park classification analyst concluded that Plaintiff's job title was appropriate for the tasks she performed.  Plaintiff then applied for an Accountant III/IV position, but was denied. Plaintiff also alleges that in July 1998, Dr. Ronnie Holden, Vice President for Administrative Affairs, hired his friend to a position of Assistant Budget Director without advertising the position as set forth in the University's policy.  Unsatisfied with these decisions, in October 1998, Okoh had her union, the Maryland Classified Employees Association ("MCEA"), file a grievance concerning the denial of her reclassification and Holden's allegedly unfair employment practices.  Plaintiff claims that in February 1999, Holden threatened to deny her a merit pay increase because she filed a complaint and promised Okoh a promotion when her department was restructured in an effort to resolve the matter.  As a result of Holden's promise, Okoh withdrew her complaint.  The record reflects that Okoh was granted a 2.5% salary increase in a letter dated March 15, 1999, to take effect in April 1999.

In May 1999, the Comptroller's office at UMES was restructured after Gary Green decided to resign from the Comptroller position at UMES.   During the restructure of the department, several individuals received promotions,[1] however, twelve employees—including a white male employed with UMES since 1972—were not promoted.  All of the individuals

---

[1] During the reorganization of the Comptroller's office the following employees were promoted: (1) Bonita Byrd, employed with UMES since 1996, was promoted from Accountant V to Comptroller; (2) Peggy Wilson, employed with UMES since 1980, was promoted from Accountant III to Bursar; and (3) Cecilia Westcott, employed with UMES since 1988, was promoted from Accountant I to Financial Aid Accountant.

receiving promotions were African American females, who were U.S. citizens,[2] and had been employed with UMES longer than the Plaintiff.  All promotions took effect July 1, 1999.  As part of the reorganization of the Comptroller's office, Rita Davis, who had been employed with UMES since 1995 was to receive a promotion from Accountant IV to Assistant Comptroller, a position created at Ms. Davis' request.

Ms. Davis, however, resigned shortly before starting the new position.  It appears that Plaintiff was not originally selected for a promotion, and thus she filed a complaint with the Maryland Commission on Human Relations ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") on June 4 and 10, 1999, respectively.  At some point thereafter, UMES appears to have offered Okoh a promotion to Accountant V General Ledger.  Okoh claims that she did not initially accept the promotion to Accountant V General Ledger because she questioned why her promotion was not to the Assistant Comptroller position.  The Defendant explained that Davis had previously worked as an Assistant Comptroller with another employer, unlike Okoh, and thus Okoh was not offered the Assistant Comptroller position.  However, Plaintiff alleges that she fulfilled the duties of an Assistant Comptroller although her title was Accountant V General Ledger.   She earned approximately $7000 less than the Assistant Comptroller position would have paid.    Nevertheless, the Plaintiff withdrew her MCHR and EEOC complaints on June 18 and 21, 1999, respectively.

In December 1999, the University of Maryland System once again restructured the job classifications of positions in the Academic Administration, and unified positions labeled as Associate Staff, Unclassified, and Classified-Exempt, into one heading entitled Exempt Staff. The policy change also dropped the numerical designation of employees' titles, for example, Accountant III positions would now be entitled Accountant.    The change in classification

---

[2] The record fails to state the national origin of these individuals, although it appears that they are all U.S. nationals.

affected all employees holding those positions throughout the University of Maryland System, but no one, including Plaintiff, received any change in salary or benefits as a result. Defendant contends that Plaintiff was advised of the policy change in a letter dated December 10, 1999. However, Plaintiff claims that she received a letter in May 2000 from Human Resources informing her of the changes.

In 2002 Plaintiff requested a salary increase and was told that due to the University's financial crisis Plaintiff would not be receiving a raise. Plaintiff sought the help of UMES President, Dr. Thelma Thompson, who scheduled a meeting with Plaintiff, Holden, Byrd, and Marie Billie, Director of Human Resources, about the denial of Plaintiff's raise. In the meeting, Billie confirmed her findings that Okoh was grossly underpaid. Although Plaintiff was denied the raise due to the University's tenuous financial positions, she alleges that the President instructed Holden to change her title and salary when the financial condition of the University improved. Defendants dispute that any such promise was made. The Defendants represent that Plaintiff received both a cost of living adjustment ("COLA") and a merit increase every year since her employment with UMES, except during 2003 and 2004, when the University experienced a financial crisis.

Plaintiff was involved in a dispute with a co-worker, Sheena Turner, in 2005. In a mediation to resolve the dispute both parties were instructed to not contact the other; however, Okoh sent Turner an e-mail in violation of the no-contact directive. Thus, Plaintiff received a reprimand in her file, which prompted her to file a grievance concerning the reprimand. As a result of the grievance hearing, it was decided that the reprimand would be removed in six months provided that there were no other incidents.[3] Moreover, throughout her employment, Plaintiff alleges that Holden offered positions to those he favored or was related to without

---

[3] The reprimand was indeed removed after six months.

4

advertising the positions.  Plaintiff claims that she would have been interested in applying for those positions had they been advertised.  The last alleged incident of Holden promoting those he favored without advertising the opening for the position occurred around 2003.

In June 2006, UMES advertised a position for the Assistant Comptroller and Okoh applied.  A Search Committee, which did not include Holden[4], interviewed Okoh in December 2006.  After the interview, Okoh alleges that she separately meet with Holden, as the final interviewer, who allegedly questioned Okoh about her dislike for him.  Plaintiff alleges that at this point she knew Holden would take actions to ensure that she did not get selected for the position.  In fact, the Assistant Comptroller position was re-advertised in January 2007 to widen the pool of applicants, although Plaintiff claims that she was most qualified out of the candidates interviewed at this point.  On February 21, 2007, Plaintiff was informed that she was not selected for the position.  Instead, the Search Committee recommend Rhonda Livingston,[5] whom UMES claims was best qualified for the position because she possessed a CPA and had previously worked as a Comptroller with another employer, which the Plaintiff had not.[6]  Plaintiff contends that individuals promoted to higher positions than the Assistant Comptroller did not possess a CPA.

On May 16, 2007, Okoh notified UMES that she was resigning effective May 30, 2007. She explained that her reason for resigning was depression and other stress related illnesses and that she was separating from the University because of Holden's unfair employment practices. In her opposition to the Motion for Summary Judgment, Okoh claims that she filed an EEOC

---

[4] Plaintiff alleges that the Search Committee was comprised of Holden's friends.
[5] Neither party provides the national origin or racial identity of Livingston.
[6] Okoh filed a supplement to her opposition to the present motion, without her attorney's signature, in which she disputed that Livingston had worked as a Comptroller in another job.  Defendants responded that this allegation was untimely, and that in any event, Livingston's previous job as Controller was synonymous with Comptroller.  The Court returned Plaintiff's self-filed documents as inappropriate.  This discrepancy in the exact title or description of Livingston's prior employment does not affect the Court's decision.

complaint in April 2007. However, she has not provided a copy of that complaint, and instead submits a letter from her attorney to the EEOC office in which he requested a right to sue letter, dated April 30, 2007. After receiving no response, Plaintiff sent another copy of her complaint to the EEOC on June 7, 2007, which the EEOC office received on June 11, 2007. It appears the Plaintiff signed her charge of discrimination on August 15, 2007, and that the EEOC sent Defendants notice of the charge on September 13, 2007.

On July 16, 2008, Plaintiff filed this action against UMES and Dr. Holden in his individual capacity.[7] Plaintiff's complaint consists of the following: (1) Count I, discrimination based on race, national origin, and sex under Title VII; (2) Count II, retaliation under Title VII; (3) Count III, discrimination in violation of § 1981; (4) Count IV, retaliation under § 1981; and (5) Count V violation of the Equal Pay Act.[8]

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

---

[7] Defendants mention in their Motion for Summary Judgment that Defendant Holden was never served in his individual capacity. However, they do appear to challenge the sufficiency of the service of process.
[8] Although not raised in the Motion for Summary Judgment, Plaintiff's complaint also alleged a claim for violation of the Federal Fair Labor Standards Act. However, this statute relates to overtime pay of employees, which does not appear to be at issue in this case. Accordingly, to the extent that Plaintiff intends to assert a claim under the Federal Fair Labor Standards Act it is dismissed.

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).   Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment.  *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

<u>**ANALYSIS**</u>

**I.     Title VII and § 1981 Claims for Discrimination**

In the absence of direct evidence of discrimination or retaliation, as is the case here, a plaintiff's claims for discrimination are analyzed under the burden-shifting proof scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must establish a prima facie case of discrimination or retaliation.  *Id.* at 802.  After establishing a prima facie case, the burden shifts to the Defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged conduct.  *Id.*  Upon this showing, the plaintiff must prove by a preponderance of the evidence that the reasons stated by the employer are actually pretext for a discriminatory purpose. *Id.* at 804.  A plaintiff can demonstrate pretext if in addition to satisfying a prima facie case there is "sufficient evidence  . . . that the employer's asserted justification is false" or "unworthy of credence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

A plaintiff has 180 days after the alleged discriminatory practice occurred to file an EEOC charge, or 300 days if state or local agency proceedings are initiated. *Id.* § 2000e-5(e)(1).  A plaintiff's failure to file a timely EEOC charge "precludes relief under Title VII."  *Venkatraman v. REI Sys.,* 417 F.3d 418, 422 (4th Cir. 2005).  "In Maryland, the statute of

limitations for employment discrimination suits brought under 42 U.S.C. § 1981 is three years."

*Ingram v. Balt. Gas & Elec. Co.*, No. Civ.A.CCB-02-2869, 2004 WL 350583, at *7 (D. Md. Feb. 25, 2004).

Here, the only claims that fall within the time period established by Title VII are alleged acts of discrimination in 2006-2007, namely the Defendants' denial of Okoh's promotion to the Assistant Comptroller position.  Thus, only those incidents alleged from June 2006 through April 2007 are timely under Title VII.  In fact, from her opposition to the present motion, it appears that Plaintiff is only challenging the denial of her promotion to the Assistant Comptroller position, which occurred on February 21, 2007.  Therefore, for purposes of her Title VII claim, the Court will only consider this incident.   Likewise, incidents before July 16, 2005, are time barred under § 1981.

## A.  Failure to Promote in violation of Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2006).  In order to establish a prima facie case of discrimination based on the failure to promote, Okoh must demonstrate that she: "(1) belonged to a protected class; (2) [] applied for the position in question; (3) was qualified for the position;" and (4) was denied the promotion "under circumstances giving rise to an inference of unlawful discrimination."  *Moore v. Mukasey*, 305 Fed. Appx. 111, 115 (4th Cir. 2008). However, this Circuit has held that Title VII does not apply to hold supervisors liable for discrimination in their individual capacity because the language of the statute indicates that it is intended to apply to employers. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998).  Accordingly, any Title VII claim against Dr. Ronnie Holden in his individual capacity is dismissed.

Plaintiff, as a Nigerian national and black female, falls within the protected class established for Title VII claims.  Plaintiff claims that she was qualified for the position because she had essentially been performing the job duties of the Assistant Comptroller position for over seven years.  However, she fails to sufficiently allege that the denial of her promotion gives rise to an inference of unlawful discrimination, namely discrimination based on her protected class.  Instead, Plaintiff merely offers her personal opinion that Holden held a personal dislike for Africans.  Such unsupported and self-serving statements are not sufficient to overcome a motion for summary judgment.

Defendants, on the other hand, do not argue that Plaintiff fails to establish a prima facie case for discriminatory denial of a promotion.  Instead, Defendants provide a nondiscriminatory explanation for why the position was offered to Livingston over the Plaintiff.  Namely, a Search Committee, that did not include Holden as a member, concluded that Livingston was the most qualified of all the applicants because she had a CPA and had previously worked as a Comptroller, qualities that Plaintiff did not possess.  Livingston additionally had 18 years of work experience.   Okoh counters that with an unsupported allegation that the Search Committee consisted of Holden's hand-picked friends.  However, there is no evidence, other than Plaintiff's self-serving allegation to support this contention.  Furthermore, Okoh argues that Bonita Byrd was offered the position of Comptroller, a position higher than the one in question, but did not have a CPA.  She also argues that another school in the University of Maryland System "only required a Master's degree . . .  and or CPA."  (Doc. No. 18, 32).  Nevertheless, whether the position should or should not have required or preferred a CPA is generally a matter of discretion vested in the University decision makers and the Search Committee.  Overall, and without more, the Court does not believe that Plaintiff has provided sufficient evidence to establish that the

proffered reasons are pretextual.  Accordingly, Plaintiff's claim for discriminatory denial of a promotion under Title VII does not survive the summary judgment motion.

### B.  Discrimination Under § 1981

42 U.S.C. § 1981 provides that "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyable by white citizens."  Under this section "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981 (2006).  To state a cause of action under § 1981 based on discrimination a plaintiff must show: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003).  As with a Title VII claim, when there is no direct evidence of discrimination, a § 1981 claim is analyzed under the *McDonnell Douglass* burden shifting framework.

This District has held that the Eleventh Amendment bars § 1981 claims against state agencies, including the University of Maryland System for either equitable or monetary relief. *See Middlebrooks v. Univ. of Md. Coll. Park*, 980 F. Supp. 824, 828 (D. Md. 1997).  The Eleventh Amendment also protects university officials sued in their official capacity with respect to monetary damages, but does not protect officials from suits seeking injunctive or prospective relief. *Adams v. Univ. of Md. at Coll. Park*, No.Civ.A.AW-00-3177, 2001 WL 333095, *2 (D. Md. Mar. 6, 2001) (citing *Middlebrooks*, 980 F. Supp. at 828).  On the other hand, "state officials who are sued in their personal capacity are not protected by the Eleventh Amendment, regardless of the recovery sought." *Middlebrooks*, 980 F. Supp. at 828.  State officials may, however, be protected from suit in their individual capacity under the doctrine of qualified immunity unless

there is evidence that their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (explaining that courts should first consider whether the facts demonstrate that a constitutional right has been violated and then determine whether the constitutional right was clearly established when the alleged misconduct occurred).

Here, UMES is protected against Plaintiff's § 1981 claim under the Eleventh Amendment.   Likewise, Holden is entitled to qualified immunity because there is insufficient evidence presented that Plaintiff was denied the promotion on the basis of her race or national origin in violation of § 1981.   Plaintiff offers nothing more than her opinion that race and national origin were motivating factors in the Defendants' decisions to deny Plaintiff the promotion.[9]   However, such conclusory allegations are insufficient on a motion for summary judgment.   There is no evidence other than Plaintiff's allegation to support that Holden held any personal animus towards the Plaintiff, or those of African nationality, and even if such animus was held, it did not appear to interfere with his and UMES's well documented reasons for its decisions regarding Plaintiff throughout her employment. Conversely, the Defendants have offered a nondiscriminatory reason for its decision to hire Livingston over the Plaintiff.   As articulated above, the Defendants represent that a Search Committee found Livingston to be the best qualified candidate for the position because she possessed a CPA and had prior experience as a Comptroller, both of which the Plaintiff lacked.   Thus, the Court cannot find that Plaintiff's constitutionally protected rights under § 1981 were violated, and Plaintiff's claim for violation of § 1981 does not survive Defendants' Motion for Summary Judgment.

---

[9] In fact, Plaintiff's opposition to the § 1981 claim focuses on the Defendants' denial of a pay raise in 2002, but she did not bring her claim until July 16, 2008.  As stated above there is a three-year statute of limitations to § 1981 claims in Maryland, and thus these allegations are time barred.

**II.     Retaliation in Violation of Title VII and § 1981**

The same standard for analyzing retaliation claims under Title VII applies to § 1981 claims.  *See Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 694 (D. Md. 2000).  Title VII prohibits discrimination against an employee who "has opposed any employment practice made unlawful by [Title VII], or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) the defendant took action that would be "materially adverse to a reasonable employee or job applicant; and (3) a causal connection existed between the protected activity and the asserted adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).  An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 126 S. Ct. at 2415.  In order to establish a casual connection, the plaintiff must show that the adverse employment action took place after the filing of the discrimination claim.  *Id.*  This Circuit has held that in "cases where the temporal proximity between the protected activity and the alleged retaliatory conduct is missing, courts can look to the intervening period for other evidence of retaliatory animus."  *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that a causal connection existed despite the seven month interval between plaintiff's complaint and her termination where there was evidence of continual retaliatory action such as when plaintiff was stripped of her job responsibilities after making the complaint) (internal citations omitted).

As with a discrimination claim, an employer may rebut the prima facie case of retaliation under Title VII and § 1981 by showing that there was a legitimate nondiscriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual.  *Munday v. Waste Mgmt. of N. Amer., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997); *see*

*also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Moreover, "a plaintiff claiming retaliation must establish that the employer had knowledge of the protected activity in order for its subsequent adverse employment actions to be retaliatory."  *Shields v. Fed. Exp., Corp.*, 120 Fed. Appx. 956, 962 (4th Cir. 2005).

Here, the Plaintiff clearly cannot claim that her 2007 EEOC complaint can form the basis of her retaliation claims because it was unquestionably filed after Plaintiff was denied the promotion.  However, Plaintiff argues that she was denied the Assistant Comptroller position because of previous complaints she filed against the Defendants.  The first of such complaints was filed in October 1998, when Plaintiff filed a grievance with the MCEA after she was denied a reclassification of her position and which complained of unfair promotional practices[10], namely the promotion of an individual Holden favored without advertising the position.  She also claims that Holden threatened to deny her a merit pay increase as a result of her grievance and promised her a promotion when the department was restructured to resolve the matter.  Thus, Plaintiff withdrew her complaint.  However, after Plaintiff did not receive a promotion when the Comptroller's office was restructured, Plaintiff then filed a complaint with MHRC and EEOC in June 1999.  These complaints were withdrawn in mid-June after the parties appeared to have reached an agreement to promote Plaintiff to Accountant V General Ledger.

First, the Court notes that the 1998 internal grievance did not complain of employment practices made unlawful under Title VII.  Instead, the Plaintiff's grievance sought a review of her classification based on her job duties and complained that Holden promoted an individual out of favoritism.  Neither of these allegations is a claim that Holden, or UMES, discriminated against the Plaintiff because she belonged to a class protected under Title VII.  Defendants also

---

[10] Although there appears to have been conflict, or even resentment, held by Plaintiff towards Holden, there is no basis for the Court to find that Plaintiff's unsupported allegations that Holden promoted individuals out of favoritism in any way supports her discrimination claims.

argue that they were not aware of the June 1999 EEOC complaint filed by Plaintiff, especially since she withdrew the complaint on June 14, 1999, and they were never served with the complaint.  In any event, even if the Court were to find that the 1998 grievance and 1999 EEOC complaints were sufficient, these complaints were filed nearly eight years prior to the Defendants' decision to deny Plaintiff the promotion.  Other than Plaintiff's contention that Holden refused to give her a raise or promotion after the University's financial situation improved in 2002 and 2003, there does not appear to be any continuing retaliatory conduct in response to the Plaintiff's complaint, especially since Defendants contend that she received a raise every year during her employment with the University.[11]  Finally, Defendants have offered a nondiscriminatory reason for denying the Assistant Comptroller position to Plaintiff because a Search Committee concluded that another candidate was more qualified for the position.  In any event, the record reflects that Plaintiff appears to have had some success across the years relating to her various grievances about her salary and title, including having the assistance of her union, but there is simply no apparent casual connection between those activities and the ultimate decision to deny the Plaintiff the promotion in 2007.  Therefore, Plaintiff's claim of retaliation under Title VII and § 1981 do not survive the motion for summary judgment.

### III.    Equal Pay Act

The Equal Pay Act prohibits employers from discriminating on the basis of sex in the payment of wages to its employees.  29 U.S.C. § 206(d)(1) (2006).  In order to establish a prima facie case for violation of the Equal Pay Act, the Plaintiff must show that: "(1) she receives a lower salary than male co-workers; (2) [she performed] work substantially equal in skill, effort, and responsibility under similar working conditions."  *Strag v. Bd. of Tr., Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995).  Once the plaintiff has made a prima facie showing, the burden

---

[11] Plaintiff received a raise every year except during 2002-2003, when the University experienced a financial crisis.

shifts to the defendant to demonstrate that the pay difference is justified by either a "seniority system, a merit system, a system that measures earnings by quality and quantity of production, or some other factor than sex." *Id.*

Here, as Defendants argue, Plaintiff has failed to identify any male co-workers who were paid more than her for performing substantially the same work. Instead, Plaintiff merely states in her opposition to the summary judgment motion that she "was obviously paid a lower salary than male accountants in the UM System." However, this conclusory allegation is insufficient to overcome a motion for summary judgment. Accordingly, Plaintiff's claim for violation of the Equal Pay Act does not survive summary judgment.[12]

## **CONCLUSION**

For the foregoing reasons the Defendants' Motion for Summary Judgment (Doc. No. 15) is GRANTED. A separate Order shall follow this Memorandum Opinion.

January 7, 2010                                                         /s/
         Date                                              Alexander Williams, Jr.
                                                          United States District Court Judge

---

[12] Defendants' contention that the Eleventh Amendment bars claims against a state agency under the Equal Pay Act is without merit. In *Martin v. Clemson University*, the court stated that "Congress has abrogated Eleventh Amendment immunity with respect to claims under the Equal Pay Act." No. 8:08-354-GRA, 2009 WL 2782182 (D.S.C. Aug. 28, 2009).